REVISED - August 12, 1999

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 98-30637

DONALD MORRIS,

Petitioner-Appellant,

versus

BURL CAIN, Warden, Louisiana State Penitentiary,

Respondent-Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 97-CV-742-H

August 3, 1999

Before SMITH, DeMOSS, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Donald Morris, Louisiana prisoner # 120944, appeals the district court's denial of his 28 U.S.C. § 2254 federal habeas corpus petition on the grounds that the reasonable doubt jury instruction at his trial was constitutionally infirm. Morris argues that the instruction used invalid language which confused or at least prejudiced the jury under Cage v. Louisiana, 498 U.S. 39 (1990) (per curiam), and Victor v. Nebraska, 511 U.S. 1 (1994). Because we believe that the jury instruction, taken as a whole, likely caused the jury to consider factors beyond those that the Supreme Court has deemed permissible, we reverse the judgment of the district court and remand for further proceedings.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Around 6:00 a.m. on August 17, 1987, Virginia Roberts was walking to a bus stop in New Orleans with her two children. A man approached her, pointed a gun at the children, and demanded

her purse, which she readily surrendered. He then told his victims to run. Roberts immediately reported the robbery to the police; officers arrived within minutes, interviewed her, and obtained a description of the assailant.

Shortly thereafter, a few blocks from the assault on Roberts, Paul Sylvester, a truck driver napping in his truck, was awakened by Morris, who was pointing a gun in his face. Morris slapped Sylvester and took his wallet. A struggle ensued in which two shots were fired; Sylvester subdued Morris and awaited the arrival of the police. The same officers who were interviewing Roberts responded to the call; they brought Roberts with them to make an identification in the event that the same perpetrator had committed both crimes. Although Roberts could not identify Morris as the man who had robbed her,[1] property taken from Roberts—a check, a pillbox, cigarettes, a lighter, gum, and several dollars—was recovered from Morris's person and identified by Roberts as her possessions.

At trial, Morris testified that he had a drug problem and that, on the morning in question, he had been drinking, smoking marijuana, and taking valium. Morris claimed to have no memory of the armed ro bberies and last remembered drinking in a club the previous evening. Morris was nonetheless convicted by a jury of two counts of aggravated robbery and sentenced to two consecutive 99-year sentences of imprisonment. Morris's convictions were affirmed on direct appeal. See State v. Morris, No. 90-KA-0085 (La. Ct. App. 1990). Morris did not file a writ application with the Louisiana Supreme Court.

Subsequently, Morris filed an application for state post-conviction relief which was denied by the criminal district court.[2] Both the state appeals court, see State ex rel. Morris v. State, No. 91-

---

[1] Morris's face was bleeding from his altercation with Sylvester.

[2] The court denied Morris's petition for a writ of habeas corpus, holding that the jury instruction claim he raised was subject to harmless-error analysis. In view of the overwhelming evidence of Morris's guilt, the court reasoned, the erroneous jury instruction was harmless beyond a reasonable doubt. The state habeas court concluded that "[g]iven the evidence against [Morris], there can be no doubt that the erroneous instruction did not contribute to the verdict."

K-1910 (La. Ct. App. 1992), and the Louisiana Supreme Court, see State ex rel. Morris v. Whitley, 642 So. 2d 866 (La. 1994), denied Morris's writ applications.[3]

Following the exhaustion of his state court remedies pursuant to Rose v. Lundy, 455 U.S. 509 (1982), Morris filed the instant 28 U.S.C. § 2254 federal habeas petition, arguing that: (1) his counsel was ineffective; (2) his sentence was excessive; and (3) the trial court's jury instruction on reasonable doubt was unconstitutional.[4] On May 6, 1998, the district court issued an order with reasons denying Morris's § 2254 petition; final judgment was entered on May 11. Morris then submitted a *pro se* notice of appeal of the district court's judgment which included a "Motion for Probable Cause" on June 12, 1998. Even though Morris's notice of appeal was received two business days late, the district court presumed that the notice of appeal was placed into the prison mailing system within the 30-day appeal period. See United States v. Young, 966 F.2d 164, 165 (5th Cir. 1992); United States v. Leach, 918 F.2d 464, 466 n.3 (5th Cir. 1990); see also Houston v. Lack, 487 U.S. 266, 276 (1988). The district court construed Morris's "Motion for Probable Cause" as a motion for a certificate of appealability and granted it with respect to Morris's claim concerning the validity of the reasonable doubt jury instruction. Our review of the district court's decision is thus confined solely to that issue.

**DISCUSSION**

**I**

---

[3]After the state appellate court denied Morris' the writ, the United States Supreme Court in Sullivan v. Louisiana, 508 U.S. 275 (1993), held that a constitutionally deficient reasonable doubt jury instruction cannot be harmless error. See 508 U.S. at 281. A year after Sullivan was handed down, the Louisiana Supreme Court denied Morris's writ application for review of the state habeas decision, thereby contradicting Sullivan by preserving the lower court's erroneous holding. See 642 So.2d at 866.

[4] The state urged below that Morris's petition is time-barred under AEDPA. Although it abandons this argument on appeal, we note that we first considered and rejected a similar contention in United States v. Flores, 135 F.3d 1000 (5th Cir. 1998). In Flores, we held that an application filed pursuant to 28 U.S.C. § 2255 was not time-barred where the conviction became final prior to the effective date of AEDPA and the petition was filed within one year of AEDPA's becoming effective. See id. at 1005. We subsequently extended the Flores court's reasoning to § 2254 petitions. See Flanagan v. Johnson, 154 F.3d 196, 199-200 (5th Cir.1998). Thus, Morris's claim, filed less than eleven months after the effective date of AEDPA, is not time-barred.

3

The Antiterrorism and Effective Death Penalty Act ("AEDPA") created a new standard of review of state court decisions rendered on the merits.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Section 2254(e)(1) further states that a determination of a factual issue made by a state court shall be presumed to be correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. See § 2254(e)(1).

A full and fair adjudication of a petitioner's claims in state court is a prerequisite for application of AEDPA's review provisions. See Nobles v. Johnson, 127 F.3d 409, 416 (5th Cir. 1997). Subsection (d)(2) applies to a state court's factual determinations, and subsection (d)(1) governs this court's review of questions of law and mixed questions of law and fact. See Lockhart v. Johnson, 104 F.3d 54, 56-57 (5th Cir.), cert. denied, 117 S. Ct. 2518 (1997). "An application of law to facts is unreasonable only when it can be said that reasonable jurists considering the question would be of one view that the state court ruling was incorrect." Drinkard v. Johnson, 97 F.3d 751, 768-69 (5th Cir. 1996), overruled in part on other grounds by Lindh v. Murphy, 521 U.S. 320, 326 (1997). Morris filed his federal habeas application on March 13, 1997, and therefore the AEDPA amendments apply to his petition. See Lindh, 521 U.S. at 326 ("[T]he amendments to chapter 153 [apply] only to such cases as were filed after the statute's enactment."); Shute v. State, 117 F.3d 233, 236 n.1 (5th Cir. 1997). Habeas relief is thus appropriate only when a state court decision is "so clearly incorrect that it would not be debatable among reasonable jurists." Drinkard,

97 F.3d at 769. In this appeal, Morris argues that the state court's unreasonable instruction led to his conviction under a standard contrary to settled federal law.

## II

### A

Morris contends that the reasonable doubt jury instruction given at his trial was unconstitutional under Cage and Victor. Morris argues that the jury instruction suggested that a juror have a higher degree of doubt to acquit than is actually required under the reasonable doubt standard. Morris supports his argument by contending that there is a reasonable likelihood that the jury applied the instruction in the instant case in an unconstitutional manner. Because of the confusion engendered by the instruction, Morris asserts, his conviction and sentence must be reversed since the improper jury instruction effectively lowered the prosecution's burden of proof.

In Cage, the Supreme Court reversed a conviction because a reasonable juror could have interpreted the reasonable doubt instruction given at Cage's trial to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.[5] See Cage, 498 U.S. at 41; cf. In re Winship, 397 U.S. 358, 364 (1970) (holding that the Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"). Specifically, the Supreme Court found that the trial judge used three phrases when defining reasonable doubt—"grave uncertainty," "actual substantial doubt," and "moral certainty"—that undermined the instruction in such a way as to render it unconstitutional. See Cage, 498 U.S. at 41.

---

[5] The Supreme Court modified its holding in Cage in its next term by holding that the proper inquiry is not whether the instruction "could have" been applied unconstitutionally, but whether there is a reasonable likelihood that the jury did so apply it. See Estelle v. McGuire, 502 U.S. 62, 72 & n.4 (1991).

In <u>Victor</u>, a fractured Court refined its reasonable doubt jurisprudence further. In that case, the Court found that it was not reasonably likely that a jury understood a reasonable doubt instruction substantially different from the one challenged in <u>Cage</u>, but incorporating two of <u>Cage</u>'s three proscribed terms, as suggesting an unconstitutional standard of proof. <u>See</u> <u>Victor</u>, 511 U.S. at 12-17. Construing two challenged instructions, the Court held that use of the terms "moral evidence," "moral certainty," "not a mere possible doubt," and "actual and substantial doubt" does not automatically invalidate an instruction. <u>See id.</u> at 22-23. Instead, the Court concluded, where "[t]here is no reasonable likelihood that the jurors who determined petitioners' guilt applied the instructions in a way that violated the Constitution," the convictions should be affirmed. <u>Id.</u>

In <u>Humphrey v. Cain</u>, 138 F.3d 552 (5th Cir. 1998) (en banc), this court held that a reasonable-doubt jury instruction substantially similar to the instruction at Morris's trial "lowered the State's burden of proof below the constitutional minimum." <u>Id.</u> at 553. The <u>Humphrey</u> court also concluded that <u>Cage</u> and <u>Victor</u> qualified for retroactive application on collateral review in accordance with <u>Teague v. Lane</u>, 489 U.S. 288 (1989), and <u>Sullivan</u>, 508 U.S. at 281-82, thereby resolving conflicting panel decisions on this issue. <u>See id.</u>

**B**

Before addressing Morris' claim, we pause to note that the state habeas court's legal determination – that any <u>Cage</u> error in the jury instructions given at Morris's trial was harmless – does not bind this Court's federal habeas corpus review. That decision was contrary to clearly established federal law as determined by the United States Supreme Court in <u>Sullivan v. Louisiana</u>, 508 U.S. 275 (1993). <u>Sullivan</u> plainly held that <u>Cage</u> error is not subject to harmless error analysis. Consequently, we will grant the writ of habeas corpus to Morris if our <u>Cage</u> analysis leads us to the conclusion that the jury instruction in this case was unconstitutional.[6]

---

[6]Of course, our circuit precedent makes abundantly clear that errors in state postconviction proceedings will not, in and of themselves, entitle a petitioner to federal habeas relief. <u>See, e.g.</u>, <u>Hallmark v. Johnson</u>, 118 F.3d 1073, 1080 (5th Cir. 1997) ("[I]nfirmities in state habeas proceedings do not constitute grounds for relief in federal court."); <u>Nichols v. Scott</u>, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in

6

At Morris's trial, the judge gave the following instruction to the jury regarding reasonable doubt:

> Ladies and gentlemen, the defendant is presumed to be innocent until he is proven guilty beyond a reasonable doubt. This means that the defendant is not required to prove his innocence, but may rest upon the presumption in his favor until it is overcome by affirmative proof. The burden, therefore, is on the State to establish the guilt of the accused to your satisfaction beyond a reasonable doubt. It is your duty, as jurors, to consider all the evidence and then apply the law as given by the Court.
>
> If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, yet, if it does not establish such guilt beyond a reasonable doubt, you must acquit the accused.
>
> However, this doubt must be a reasonable one, that is, one that is founded upon a real, tangible, and substantial basis and not upon mere caprice, fancy or conjecture. It must be such a doubt as would give rise to a grave uncertainty raised in your mind by reason of the unsatisfactory character of the evidence or the lack thereof. A reasonable doubt is not a mere possible doubt. It is an actual or substantial doubt. It is a doubt that a reasonable man would seriously entertain. What is required is not an absolute or mathematical certainty but a moral certainty.
>
> If, after giving fair and impartial consideration to all the facts in the case, you find the evidence unsatisfactory or lacking upon any single point indispensably necessary to constitute the defendant's guilt, this would give rise to such a reasonable doubt as would justify you in rendering a verdict of not guilty.

The instructions at Morris's trial used the terms "grave uncertainty," "actual or substantial doubt," and "moral certainty." Under Cage, use of these exact three terms[7] was, of course,

_____

respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotations omitted). Rather, we must find constitutional error at the trial or direct review level in order to issue the writ. We therefore reject Morris's contention that we should grant habeas relief because the state habeas court erred.

[7] It is worth noting that the instructions in Cage used the phrase "actual substantial doubt," while the instructions at Morris's trial inserted the conjunction "or" into the mix, calling for "actual *or* substantial doubt" (emphasis added). Although it is arguable that the distinction is significant, we believe that the intent behind both instructions was the same, particularly given that the instructions here were standardized for use in Orleans and Jefferson Parishes for decades. Additionally, this court sitting *en banc* affirmed a grant of habeas on the basis of an instruction which read "actual or substantial doubt." See Humphrey v. Cain, 138 F.3d 522 (5th Cir. 1998) (en banc), aff'g 120 F.3d

disapproved. See 498 U.S. at 41. In the instant case, however, the district court, in considering the erroneous instructions in the context of the jury instructions as a whole, believed that the additional instructions given to Morris's jury "articulate[d] the reasonable doubt standard and provide[d] context for the challenged portion of the instruction." Essentially, the district court held that, under Victor, a jury instruction containing impermissible Cage language would be saved if it also contained "additional instructions" beyond the proscribed ones that, when read together, create "no reasonable likelihood that the jury understood the instructions to permit conviction upon a lesser burden than reasonable doubt as required by Cage-Victor."

We disagree. Victor admittedly muddies the water surrounding the constitutionality of reasonable doubt instructions; it is difficult to parse the case in light of Cage, particularly given that finding instructions "reasonably likely" to confuse presents a court with the slipperiest of slopes. Nonetheless, we believe it is possible to fashion relatively clear rules in this arena without recourse to a broad ruling—such as the district court's in this case—that will ensure that every Cage claim would fail under Victor. We believe that Victor operates to separate the wheat from the chaff in the reasonable doubt jury instruction arena; Victor makes clear that certain instructions may be so egregious as to be reasonably likely to lead to unconstitutional considerations by the jury. The district court's decision in this case erroneously subverts that possibility, a fact amply demonstrated by a comparison between the instructions in the instant case and those in Cage and Humphrey, which mixed unconstitutional language with approved constructions as well.[8]

Although we could rest our ultimate conclusion on the similarity between the instructions in the three cases, we proceed in order to clarify why the instructions in Morris's case were constitutionally improper. Just as in Cage, the trial judge in the instant case clouded the issue of what

_____

526, 528 (5th Cir. 1997).

[8] Indeed, our review of the record in this case leads us to believe that the judge in Morris's trial used an instruction functionally equivalent to the ones used in Cage and Humphrey. See Cage v. State, 554 So. 2d 39, 41 (La. 1989); Humphrey v. Cain, 120 F.3d 526, 528 (5th Cir. 1997). In fact, many of the sentences are repeated verbatim in the three charges.

constitutes reasonable doubt by failing to provide alternative definitions of reasonable doubt that pass constitutional muster. The instruction included the same three phrases that the Supreme Court specifically found to be unconstitutional when used in Cage, including "grave uncertainty," "actual substantial doubt," and "moral certainty." Of course, Cage did not hold that the use of these terms in and of themselves mandated a finding of unconstitutionality, see Brown v. Cain, 104 F.3d 744, 755 (5th Cir. 1997), but neither did it, or subsequent decisions, hold that the presence of unobjectionable language automatically saves an instruction. This understanding is crucial, particularly where we are asked to review essentially *the same* instruction that was presented to the Supreme Court from a Louisiana trial judge in Cage.

By extension, we do not find apposite Victor's admonition that an unconstitutional instruction may be allowed where there is no reasonable likelihood that jurors applied the instructions in an unconstitutional manner.[9] See 511 U.S. at 22-23. We simply cannot reach that conclusion in the instant case; there is a reasonable likelihood that the jurors at Morris's trial were led down an unconstitutional path by the judge's instructions. A simple examination of the various instructions clarifies any perceived disjuncture between Cage and Victor. Taken as a whole, the instructions in Victor were clear enough for the jury to understand the proper standard to apply. For instance, although the challenged instruction used the phrase "moral certainty," it did so while cautioning the jurors that they must possess an abiding conviction of the defendant's guilt; indeed, the trial court, in the same sentence, equated "moral certainty" with certainty which would preclude hesitation to convict. See id. at 21.

---

[9] Although the en banc court found that Victor is retroactive for purposes of the second Teague exception, see Humphrey, 138 F.3d at 553, we note that there is an open question as to whether Victor (handed down in 1994) is retroactively applicable to Morris's case (whose conviction became final in 1990) under AEDPA. See Sharad Sushil Khandelwal, The Path to Habeas Corpus Narrows: Interpreting 28 U.S.C. § 2254(d)(1), 96 MICH. L. REV. 434, 440 n.45 (1997) (discussing the applicability of the Teague exceptions to AEDPA). To our knowledge, no court has reached this issue. Cf. In re Smith, 142 F.3d 832, 836 (5th Cir. 1998) (holding that Humphrey's ruling on retroactivity does not control for purposes of second successive habeas filings under AEDPA). We find it unnecessary to do so either since we hold that Morris's conviction must be reversed notwithstanding Victor.

We do not find a similar relationship between objectionable and approved terms in the instant case. The particularly egregious terms "grave uncertainty" and "moral certainty" are isolated from the clarifying language of the instructions which the Court in Victor found saving. Given the length and the complexity of any reasonable doubt instruction, we believe that it is dispositive, or at the very least significant, that the placement of any unconstitutional terms be such as to ameliorate their effect virtually instantaneously. Such was not the case here; the terms were never qualified for the jury. We thus cannot find a reasonable likelihood that the jurors applied the proper constitutional measure with regard to Morris's case.

Because the right to trial by jury in a criminal trial is the most basic protection offered a criminal defendant, see, e.g., Sullivan, 508 U.S. at 281-82 (holding that denial of the right to a jury verdict of guilt beyond a reasonable doubt is a structural error "with consequences that are necessarily unquantifiable and indeterminate" but which in all cases eliminates the Constitution's most basic protection for the criminal defendant), we are loath to conclude that an instruction such as this one, peppered throughout with unqualified, unconstitutional language, nonetheless afforded that defendant a fair trial. Notwithstanding the severity of the State's evidentiary burden, we find the numerous inappropriate references in the instructions to render it constitutionally infirm under Cage, see 498 U.S. at 41, and we conclude with reasonable likelihood that the jury applied the instructions in a way that violated the Constitution under Victor. See 511 U.S. at 22-23.

### III

Although the Constitution "neither prohibits trial courts from defining reasonable doubt nor requires them to do so," Earhart v. Johnson, 132 F.3d 1062, 1069 (5th Cir. 1998), when a court elects to make such an instruction, it must meet constitutional criteria. For the foregoing reasons, we hold that the instruction in this case did not, and we REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

REVERSED AND REMANDED.